HAWAIIAN REPORTS, 1857.                    55

R. Coady *et als. v.* 1,200 bbls. Oil, 15,000 lbs. Bone, etc.

---

## SUPREME COURT—IN ADMIRALTY.

---

R. COADY *et als. vs.* 1,200 BBLS. OIL, 15,000 LBS. BONE, ETC., ETC.

THE procuring of an order to the Marshal to dispose of the libelled property in the manner decreed by the Court below, is not such an act as bars the libellants' right of appeal.

An appeal in Admiralty may be taken at any time within six months after decree, unless said decree is fully executed.

An appeal operates as a stay of execution, subject to the necessary order for the safe custody, delivery or security, or sale of the property proceeded against.

On appeal from the decision of the Chief Justice, at Chambers.

Justice ROBERTSON delivered his opinion as follows:

This is a motion to dismiss the appeal of the libellants, on the ground that they, through their Proctor, have procured the issuing of the usual order to the Marshal to dispose of the property in the manner decreed by the Court below, thus manifesting their acquiescence in the decree; and that such order has been executed by the Marshal.

Our statutory provisions in regard to proceedings in admirralty are of the most limited description, consisting merely of a few general provisions, scattered about in a somewhat disjointed manner, through the various enactments relating to the jurisdiction and practice of the Courts of Record and of the

justices thereof at chambers. Some of those provisions, affecting cases like the present, will be found in the first clause of sec. 7, page 55, vol. 2, Statute Laws, which reads as follows:

"The Chief Justice shall have power at Chambers to adjust average claims, general and particular, decree the compensation of salvors, and to fix the responsibility of underwriters upon the application of parties, concerned, and may make binding awards thereon, subject to the right of appeal, and enforce the same by execution to be issued by the clerk of said court."

By section 11, page 57, of the same volume, the Chief Justice is empowered to prescribe the rules of practice to be observed in proceedings had before him at Chambers. The Judiciary Act of 1853 makes no additional provision in regard to proceedings in admiralty, but merely enacts that the Chief Justice shall have power at Chambers to issue process in, and to hear and determine, among other things, all cases in admiralty, subject however to an appeal to the full Court. (See Laws, 1853, p. 4, sec. 4.) No rule has ever been adopted and promulgated by the Chief Justice in regard to the time within which an appeal may be taken from any decision rendered by him at Chambers, sitting as a Court of Admiralty, nor in regard to what acts of any party interested shall constitute a waiver, on his part, of the right to appeal ; nor have cases of this class been as yet sufficiently numerous to create and establish any fixed practice. We are thus left, as I apprehend, without any statutory provision, or rule of Court, or previous decision, by which we must be guided in deciding upon the motion now before us ; and until the Chief Justice shall have promulgated some definite rule upon the subject, there is no limit as to the precise time within which an appeal may be taken.

Reference has been made, in the course of the argument, to the practice, in regard to appeals, of the courts of the United States, in admiralty cases. The practice in those courts, which is based upon statute, and clearly defined by rule, is characterized by that liberality which marks the proceedings of admiralty courts the world over. By the Act of Congress of 1803, appeals from the District to the Circuit Courts, in admiralty causes, are placed upon the same footing with respect to the amount in controversy, as writs of error in suits at common

law ; and an appeal is substituted for a writ of error from the Circuit Courts to the Supreme Court. According to the construction which the acts of 1789 and 1803 have received, they authorize an appeal, in the technical sense of the term, as contra-distinguished from a writ of error, from all final decrees of the District Courts in such causes where the matter in dispute exceeds the sum or value of $50, exclusive of costs, to the next Circuit Court ; and from all final decrees of any Circuit Court, where the matter in dispute, exclusive of costs, exceeds the sum or value of $2,000, at any time within five years after the decree is rendered, and that, too, exclusive of the time that a party may be laboring under a disability, such as infancy, coverture, etc. (See Conkling's U. S. Admiralty, pp. 714–715.) Under the application of the 23d Section of the U. S. Judiciary Act of 1789 to admiralty causes, upon a copy of the appeal being lodged for the adverse party, in the clerk's office, where the record remains, within ten days, Sundays exclusive, after the decree is rendered, such appeal operates as a supercedeas and stay of execution ; and no execution can lawfully issue, in any case where an appeal would lie, until the expiration of the ten days. (Conkling's U. S. Admiralty, p. 719.)

In the case of the "Dos Hermanos" the courts of the United States went even beyond what might be considered ordinary liberality in permitting an appeal. In that case, one-half of the proceeds of a prize was awarded, in the nature of salvage, to a non-commissioned captor, by the District Court for Louisiana, without deducting his expenses. Upon the case coming before the Supreme Court, in 1825, upon the captor's appeal, a question was made as to whether the appeal was in time, as it appeared that, although the appeal had been prayed for and allowed in the District Court within five years, the appellant had not given the security required by law until after the expiration of that period. The Supreme Court refused to dismiss the appeal notwithstanding this apparent irregularity, Chief Justice Marshall remarking that, "the mode of taking the security, and the time for perfecting it, are matters of discretion to be regulated by the Court granting the appeal ; and when its order is complied with, the whole

has relation back to the time when the appeal was prayed.".
(Curtis Dec. of the Sup. Court U. S., p. 413. See, also, the
steamboat "New England," 3 Sumner's Rep., p. 495.)

I may also refer, *en passant*, to the case of the "Sally," (1
Vol. English Ad. Rep., p. 224), which was an appeal from the
Vice Admiralty Court of New Brunswick, and to several other
cases of a similar character, of which I have made no particu-
lar note, as showing the liberality of the English Appellate
Court upon this subject.

The Proctor for the claimants asks the Court to dismiss the
appeal in the present case, on the ground that the libellants,
through their Proctor, procured the issuing of the usual order
to the Marshal, thus showing their acquiescence in the decree,
and that they ought to be held to have thereby perempted
their right of appeal. In support of this position he cites the
case of Lloyd and Clarke *vs.* Poole, (3 Hagg. Eccl. Rep., 482) in
which it was held that if a party does acts in furtherance of a
sentence, viz., attending the taxation of costs, he bars his right
of appeal. I do not consider the case cited as entitled to any
weight in the decision of the motion now before us, and I am
strengthened in this opinion by what is reported to have
been said, *arguendo*, by the King's Advocate in the case of the
"Sally," already referred to, showing a fundamental dissimilar-
ity in the practice of the Ecclesiastical and Admiralty Courts.
He argued that, "according to the practice of the Court of
Admiralty, a party can only appeal from a definite sentence, or
a decree having the force and effect of a definite sentence ;
and, therefore, the power is reserved to him of appealing, at
the same time, from all grievances that have been done pre-
viously, or inflicted by the judge from whom the appeal is
brought. In the Ecclesiastical Courts, following the different
practice of the canon law, it is otherwise ; and if a party *pro-
ceeds to take any step after the grievance complained of*, he is held
to have perempted his appeal." This, continued the learned
advocate, is a distinction arising from the different processes of
the civil and canon law.

I have no doubt, however, that a party may, by his acts in
Court, in the course of the proceedings in an Admiralty cause,
peremp his right of an appeal. For instance, where all the

parties, as in the present case, stipulate on the record that the judge may decree a certain part of the property to be divided in specie, in lieu of ordering a sale of such property and a subsequent partition of the proceeds I, should say that each and all of the parties had barred their right to appeal from the decree, so far as it was affected by such stipulation. In the case of the " Clifton," (vol. 4, English Adm. Rep., p. 375), before the Lords of the Privy Council, which was a salvage case, the salvors were held to have peremped their appeal, under somewhat peculiar circumstances, on the ground that their proctor so conducted himself in Court, at the time the final decree was made as to costs, that they were held to have agreed, through him, to such final decree. But I do not consider that case as one to be relied on with much confidence, as an authority, for Mr. Baron Parke, in delivering judgment, concluded as follows : " Their Lordships believe that, under the circumstances of this case, the most merciful course for both parties is, that the cause should be thus put an end to, but they do not think proper to award any costs."

Was the act of the libellants' proctor, in procuring the issue of the order to the Marshal, an act in Court, and such an act as ought to be held to bar the libellants' right of appeal ? I am of the opinion that it was not. I do not regard it as an act done in Court, within the proper meaning of that expression. Nor do I consider it necessary, in the absence of any rule to that effect, that either of the parties interested should have applied to the Clerk to issue the order to the Marshal. The Court had ordered the Marshal, at the commencement of the suit, to take the property into his possession to await its adjudication, and when such adjudication was had, it seems to me that it was the province of the Court, of its own accord, to instruct the Marshal to proceed to dispose of the property, in accordance with its decree, unless some of the parties interested moved for a stay of execution, or interposed an appeal, which in my opinion, ought to operate, in general, as a stay of execution. I think it would be unusually harsh if the Court should dismiss the appeal upon this ground, for I am not aware of any case in which a party has ever been turned out of this Court, upon a mere point of practice, unless where there existed a positive rule by which he might and ought to have been guided.

But it is urged by the proctor for the claimants, that the decree of the Court below had been executed, before the libellants filed their appeal. I am of opinion that this objection is not sustained by the facts of the case, for up to the time of the hearing of this motion the Marshal had made no return ; and the only evidence before us to show that the decree had been executed, was the receipt given by the libellants to the Marshal for their share of the bone. But if both the bone and the oil had been delivered to the libellants before they took their appeal, even then it could only be said that the decree was partially executed ; for before the decree can be fully executed, there remains yet another order to be made, I apprehend, for the distribution of the proceeds of that part of the salved property which was decreed to be sold.

The apprehension expressed by the proctor for the libellants that he had taken his appeal too early, rather than too late, I think is groundless ; for, unless I have misunderstood the decree made by the Chief Justice, it is in its nature and effect final in the cause, even to the adjudication of the costs. The proctor regards the order which is yet to be made for distribution of certain proceeds, as a final decree, whereas it is merely an order in execution of the decree already made. I am not aware that any decree or order yet remains to be made by his Honor the Chief Justice, which could properly be appealed from.

In the absence of any definite rule in regard to appeals in such cases as the present, it would, perhaps, be wise for this Court, following the example of the courts of the United States, under their statutory provisions, to place appeals in admiralty causes, on the same footing with writs of error in cases at common law, under our statutes, by allowing such appeals to be taken at any time within six months after the decree is rendered, unless such decree shall have been fully executed ; and in all cases allowing an appeal to operate as a stay of execution, (see Stat. Laws, vol. 2, p. 51, Sec. 28,) subject to any necessary order respecting the safe custody, delivery on security, or sale of the property proceeded against.

I am clearly of the opinion that the motion should be refused,

and the appeal of the libellants entertained by the Court, upon such terms as shall secure the claimants from damage.

Chief Justice ALLEN concurred that the motion should be denied, and the appeal entertained by the Court.

Mr. Bates and Mr. Griswold, for the libellants.

Mr. Montgomery, for the claimants.